**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ARMANDO COLON,
                            Plaintiff,

    v.                                    No. 04-CV-1029
                                             (FJS/DRH)
LESTER N. WRIGHT,

                            Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

ARMANDO COLON
Plaintiff Pro Se
No. 82-A-3397
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021

HON. ANDREW M. CUOMO           BRIDGET ERIN HOLOHAN, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Armando Colon ("Colon"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Lester N. Wright ("Dr. Wright") violated his constitutional rights under the Eighth Amendment. Compl. (Docket No. 1). Presently pending is Dr.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Wright's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 33. Colon opposes the motion. Docket No. 34. For the following reasons, it is recommended that Dr. Wright's motion be granted.

### I. Background

The facts are presented in the light most favorable to Colon as the non-moving party. See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

At all relevant times, Colon was an inmate in the custody of DOCS. In February 1999, Colon was diagnosed with Hepatitis C,[2] grade II, stage II.[3] See Wright Decl. (Docket No. 33), Ex. I; Compl. at ¶ 6. On June 23, 1999, after Colon consulted with a gastroenterologist, it was recommended that Colon begin receiving monotherapy treatment with Interferon to treat his Hepatitis C. See Wright Decl., Ex. H at 5; Compl. at ¶ 7. Shortly thereafter, Colon began receiving monotherapy treatment with Interferon. See Wright Decl., Ex H at 6. However, Colon's treatment with Interferon was discontinued on August 3, 2000 when it was determined that his Hepatitis C was in remission. See id. at 75, 78.

---

[2] Hepatitis C is "a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver. Cirrhosis ultimately can lead to liver failure and death." Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006).

[3] The grade of Hepatitis C measures the inflammation caused by the disease ranging from 0 (none) to 4 (extensive). The stage measures the fibrosis from 1 (none or mild) to 4 (probable or definite cirrhosis). The Hepatitis Information Network (vosoted Feb. 6, 2007), <http://www.hepnet.com/hkn/c14.html>.

Although Colon's Hepatitis C was in remission, his ATL[4] levels continued to be monitored. See id. at 92, 96; Compl. at ¶ 10. However, in June 2001, Colon's test results indicated that he had a relapse of Hepatitis C and it was recommended that he again see a gastroenterologist. See Wright Decl., Ex. H, at 100. In November 2001, Colon was examined by Dr. Paula Burkhard, a gastroenterologist at Wende Correctional Facility, who recommended that Colon be re-treated with the combination therapy of Pegylated-Interferon[5] with Ribavirin. See Wright Decl., Ex. L; Compl. at ¶¶ 19-20. Shortly thereafter, Dr. Graceffo, Colon's treating physician at Auburn Correctional Facility ("Auburn"), contacted Dr. Wright, the Deputy Commissioner of DOCS and DOCS Chief Medical Officer, regarding Dr. Burkhard's recommendation. See Wright Decl., Ex. H at 104, 106. Dr. Wright informed Dr. Graceffo that Pegylated Interferon was not approved by the Food and Drug Administration ("FDA") for re-treatment of Hepatitis C. See id. at 106. Dr. Graceffo informed Colon regarding Dr. Wright's answer, but Colon objected to not receiving Dr. Burkhard's recommended treatment of Pegylated Interferon. See id.

Dr. Wright advised Colon that the treatment recommended by Dr. Burkhard was denied because of Colon's age (the DOCS protocol stated an age limit of 61 and Colon was then 63), his history of failed treatment, and his failure to complete a substance abuse

---

[4] ATL levels refers to a patient's serum aminotransferase levels and are monitored through a liver function test. See Wright Decl. at ¶ 15.

[5] "When the interferon is pegylated, it is not absorbed by the body as quickly as non-pegylated interferon. Accordingly, the drug remains in the body longer. Since pegylated-interferon remains in the body longer, it in combination with ribavirin is usually the preferred approach in patients who have not previously received treatment." Wright Decl. at ¶ 13.

3

treatment program. Wright Decl., Ex. M at 2-3. Colon filed a grievance. See id. at 1. On February 27, 2002, Colon's grievance was unanimously denied by the Central Office Review Committee ("CORC"). See id. at 3.

On or about January 15, 2002, Dr. Wright received a letter on behalf of Colon from Prisoners' Legal Services of New York (PLS) requesting that Dr. Wright reconsider his decision not to re-treat Colon. See Wright Decl., Ex. N. After further correspondence with PLS, Dr. Wright agreed to waive the age requirement for re-treatment but required that Colon complete a substance abuse treatment program. See id. Dr. Wright also stated that since the FDA had not yet approved the combination re-treatment of Pegylated-Interferon with Ribavirin for patients such as Colon who had relapsed, Colon was required to await FDA approval before commencing the combination re-treatment. Id. Finally, Colon and Dr. Wright agreed that "if FDA approval for retreatments with more effective medications does not become a reality this year [2002], and should [Colon's] health begin to fail, he [will] be treated with whatever treatment is then available for patients who have relapsed." Id.; Compl. at ¶ 54.

In November 2002, Colon again requested that he be treated with the combination therapy of Pegylated-Interferon with Ribavirin, but Dr. Wright denied the request because this therapy still had not received FDA approval for re-treatment. See Wright Decl., Ex. O. On October 31, 2003, Colon completed a substance abuse treatment program. See Wright Decl., Ex. P. In May 2004, Colon was advised that he could begin the re-treatment therapy of Interferon with Ribavirin, but he refused treatment unless it involved Pegylated-Interferon with Ribavirin. See Wright Decl., Ex. H at 173; Wright Decl. at ¶ 32; Compl. at ¶¶ 55-63.

4

This action was commenced on August 31, 2004. Docket No. 1. In September 2004, a liver biopsy was conducted on Colon which indicated that his Hepatitis C was at grade III, stage II. See Wright Decl., Ex. I at 5.

From October 7, 2004 through June 17, 2005, Colon was not in DOCS custody. See Holohan Aff. (Docket No. 33), Ex. A. After returning to DOCS custody, Colon was again examined by a gastroenterologist on July 13, 2005. See Wright Decl., Ex. L. The gastroenterologist noted Colon's grade III, stage II Hepatitis C and recommended that he be treated with Pegylated-Interferon with Ribavirin. Id. However, this treatment was still not FDA approved for patients such as Colon who had relapsed. See Wright Decl. at ¶ 35. On August 8, 2005, Colon was scheduled to begin re-treatment with Interferon with Ribavirin but refused treatment when advised that he would not be treated with Pegylated-Interferon. See Wright Decl., Ex. H at 193 & Ex. Q; Holohan Aff., Ex. B at 35.

## II. Discussion

Colon's sole cause of action alleges that Dr. Wright was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Compl. at ¶¶ 78-83.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Eighth Amendment**

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than

negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. Chance, 143 F.3d at 702-03. Here, it is undisputed that Colon's Hepatitis C virus constitutes a serious medical need. See Def. Mem. of Law (Docket No. 33) at 6.

Dr. Wright contends, however, that Colon has failed to meet the deliberate indifference requirement of his claim. Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. Id. at 702. Mere disagreement over proper treatment does not create a constitutional claim as

long as the treatment was adequate. Id. at 703. Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Colon contends that Dr. Wright should have followed the recommendations of the two gastroenterologists who prescribed Pegylated-Interferon with Ribavirin for treatment. However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim" so long as the treatment was adequate. Chance, 143 F.3d at 703; see also McKenna v. Wright, No. Civ. 01-6571 (WK), 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("courts have repeatedly held that dispute between two doctors as to the proper course of medical treatment will not give rise to an Eighth Amendment violation") (citations and internal quotations omitted).

Here, there is no evidence that the re-treatment eventually recommended by Dr. Wright involving Interferon with Ribavirin was inadequate. Further, Dr. Wright has repeatedly stated that he refused to re-treat Colon with Pegylated-Interferon with Ribavirin because, even though recommended by the two gastroenterologists, the treatment had yet to gain FDA approval. See Wright Decl. at ¶ 38. It was neither unreasonable nor indifferent for Dr. Wright to refuse a treatment not approved by the FDA. Thus, Colon has failed to demonstrate that Dr. Wright was deliberately indifferent to his serious medical needs. See United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 867-68 (2d Cir. 1970) (holding that inmates do not have the right to the medication of their choice).

Therefore, it is recommended that Dr. Wright's motion on this ground be granted.

### C. Qualified Immunity

Dr. Wright also contends that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Colon's allegations as true, he has not shown that Dr. Wright violated his constitutional rights.

Therefore, it is recommended in the alternative that Dr. Wright's motion for summary judgment on this alternative ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that Dr. Wright's motion for summary judgment (Docket No. 33) be **GRANTED** and the case be terminated.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: February 7, 2007
        Albany, New York

                                              *David R. Homer*
                                          United States Magistrate Judge